*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

TINA MARIE MALETTO,

             Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

             Defendant.

Civil Action No. 20-12508 (FLW)

**OPINION**

**WOLFSON, Chief Judge:**

Tina Marie Maletto ("Plaintiff") appeals from the final decision of the Acting Commissioner of Social Security, Kilolo Kijakazi ("Defendant"), denying Plaintiff's application for disability under Title II of the Social Security Act (the "Act"). After reviewing the Administrative Record ("A.R."), the Court finds that the Administrative Law Judge's ("ALJ") decision was based on substantial evidence, and accordingly, the ALJ's decision is **AFFIRMED**.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, born on January 25, 1958, was 56 years old on July 22, 2014,[1] her alleged disability onset date. (A.R. 27.) Plaintiff is 4'11'', weighs 132 pounds, and has a high school education. (A.R. 34.) On April 21, 2015, Plaintiff filed a Title II application for a period of disability, alleging disability due to polymyositis, hand numbness, hand tingling, lack of vitamin D, ulcers, a removed gall bladder, general soreness, high cholesterol, and heartburn. (A.R. 27,

---

[1] Plaintiff's application originally alleged her disability period began on January 1, 2012, but she later amended this date. (A.R. 103-104.)

110.)  This application was denied initially on August 6, 2015, and upon reconsideration on June 20, 2016.  (A.R. 27.)  Plaintiff then filed a written request for a hearing before an ALJ, which was held on July 11, 2019.  (*Id*.)  On July 25, 2019, the ALJ found Plaintiff was not disabled under the relevant statutes.  (A.R. 41.)  Plaintiff requested review of the ALJ's decision by the Appeals Council, which was denied on July 20, 2020, after the Council determined that there was no basis to review the ALJ's decision.  (A.R. 1-4.)  This appeal ensued.

### A.  Review of Medical Evidence

#### i.    Medical Records

In July 2014, Plaintiff was treated at Monmouth Family Health Center upon complaint of back pain with numbness, bilateral hand numbness, tingling, morning stiffness, decreased sensation or weakness in her hands.  (A.R. 399.)  On examination, Dr. Tisha Tan, M.D., found that Plaintiff had a normal range of motion in her extremities, intact senses, normal gait, and was able to stand without difficulty.  (A.R. 400.)  Dr. Tan diagnosed Plaintiff with peripheral neuropathy, back pain, and peptic ulcer disease.  (A.R. 401.)  Dr. Tan prescribed Tylenol, Clotrimazole, and Gabapentin, as well as physical therapy and an MRI.  (*Id*.)  Plaintiff returned on August 5, 2014, and Dr. Tan noted Plaintiff had signs and symptoms of carpal tunnel and had ganglion cysts on both wrists.  (A.R. 403.)  But Plaintiff denied joint pain, limitation of motion, or muscular weakness.  (A.R. 404.)  Further, Plaintiff's x-rays of her wrist, left hip, and spine were unremarkable.  (A.R. 405.)

On September 30, 2014, Plaintiff stated she had intermittent right upper quadrant pain when she ate fatty foods.  (A.R. 409.)  Again, Plaintiff denied joint pain, limitations of motion, or muscular weakness.  (A.R. 410.)  Plaintiff's examining physician, Dr. Mana Rao, M.D., noted Plaintiff had a history of degenerative disc disease, but that she had completed physical therapy

and reported no further pain.  (A.R. 411.)  Dr. Rao also stated that Plaintiff had a history of ganglion cysts in her wrist, but she was presently asymptomatic.  (*Id*.)  On May 5, 2015, Plaintiff saw Dr. Tan for weakness in her bilateral upper extremities, numbness on her right and left arm and fingers, thigh aches with numbness, and pain in both wrists and knees.  (A.R. 424.)  Dr. Tan referred Plaintiff for x-rays on her knee, hand, and lumbar spine.  (A.R. 426-427.)  On May 18, 2015, Plaintiff visited a neurologist, Dr. Khakoo, M.D.  (A.R. 522.)  Plaintiff complained of pain and bilateral hand weakness.  (*Id*.)  Dr. Khakoo diagnosed Plaintiff with peripheral neuropathy, cervical and lumbar spondylosis and herniation, and bilateral carpal tunnel syndrome.  (A.R. 523.)  On June 9, 2015, Plaintiff underwent nerve conduction studies in both upper extremities and an EMG in her right upper extremity.  (A.R. 443.)  The studies found prolonged right median distal latency and absent right median sensory nerve action potential, normal motor and sensory conductions in her right ulnar nerve and left median and ulner nerves.  (A.R. 444.)  These findings were consistent with right carpal tunnel syndrome.  (*Id*.)

Plaintiff attended physical therapy at Healing Star Physical Therapy and Wellness between August 2015 and October 2015 with the goal of alleviating pain, stiffness, and tingling in her fingers, hands, arms, and neck.  (A.R. 446-447.)  Her physical therapist's initial assessment was that Plaintiff's symptoms stemmed from her cervical and upper back, and did not appear to be carpal tunnel related that day.  (A.R. 448.)  On September 14, 2015, Plaintiff reported that she still had pain and discomfort in her right neck, but is feeling better after therapy.  (A.R. 468.)  At her final physical therapy session on October 2, 2015, Plaintiff was assessed as making very slow progress, and that her symptoms were still aggravated by doing household chores.  (A.R. 487.)

On November 30, 2015, Plaintiff reported to Dr. Assems Jacob that she had increased tingling sensation and numbness in her arms, and that she was unable to sleep due to the numbness

and tingling that radiated from her fingers to her shoulder and neck.  (A.R. 493.)  Plaintiff also complained of pain and numbness when holding weight in her hands, as well as hand weakness, which resulted in dropping items, particularly when in her right hand.  (*Id*.)  Dr. Jacob found she had normal range of motion in all of her extremities.  (A.R. 495.)

In September 2016, Plaintiff reported neck pain and headaches to her physical therapist. (A.R. 695.)  Further, she complained of dropping objects, as well as throbbing pain when she slept. (*Id*.)  In December 2016, Plaintiff reported still having neck pain and headaches, but her headache symptoms had improved by 70% and she felt a 50% improvement with hand numbness.  (A.R. 731.)  On January 11, 2017, Dr. Kevin C. McDaid, M.D., noted that Plaintiff had been given an injection for her carpal tunnel six weeks prior and that she had experienced moderate relief, which included no longer having numbness, but having some residual tingling at night.  (A.R. 747.)  Plaintiff stated she was not interested in surgical treatment at the time, and Dr. McDaid stated she should be treated conservatively with injections every three months, physical therapy, and splinting until she feels she is not getting any better or worse.  (*Id*.)  In April 2017, Plaintiff reported moderate relief from her prior injection, and she received another injection.  (A.R. 748.)

On January 11, 2018, Dr. Joseph T. Glower reported that Plaintiff's conservative treatment had failed, and that she was still showing chronic carpal tunnel symptoms, including numbness and tingling.  (A.R. 756.)  For this reason, Dr. Glower performed a right carpal tunnel release. (*Id*.)  On January 24, 2018, Plaintiff returned to Dr. Glower for a post-operation meeting and reported no issues and that her parasthesias are improving.  (A.R. 758.)  On February 21, 2018, Plaintiff visited Dr. Glower and stated that she had hypersensitivity in her wrist and decreased grip strength.  (A.R. 759.)  But Plaintiff also claimed that her numbness and tingling had improved greatly, aside from one episode overnight. (A.R. 759.)  Dr. Hoan-Vu Nguyen, MD, reported on

4

April 25, 2018, that Plaintiff had been participating in occupational therapy and that Plaintiff's numbness and tingling had improved or were completely gone.  (A.R. 760.)

ii.    **Medical Opinion Evidence**

On the initial review of Plaintiff's disability application, Dr. Jose Rabelo, a state agency medical consultant, found Plaintiff's impairments to be non-severe and Plaintiff to be not disabled. (A.R. 119, 121.)  Dr. Rabelo determined that Plaintiff had full range of motion in both her upper and lower extremities, no neurological deficits, and normal gait.  (A.R. 120.)  Dr. Rabelo's opinion also noted that from the internal medicine point of view, Plaintiff had no restrictions in her physical RFC.  (*Id*.)  On reconsideration, state medical consultant, Dr. Mary McLarnon, opined that Plaintiff can perform light work.  (A.R. 139.)  Dr. McLarnon also found Plaintiff has no limitations in climbing ramps or stairs, balancing, but has occasional or frequent limitations in climbing ladders, stooping, kneeling, crouching and crawling.  (A.R. 136.)  Her opinion also found that Plaintiff was limited in reaching overhead on both her right and left sides, handling and fingering on her right side, but had no limitations as to feeling.  (*Id*.)  Plaintiff also had no visual, communicative, or environmental limitations.  (A.R. 137.)  Dr. McLarnon determined that Plaintiff could perform her past relevant work as "Jewelry Sales" as it is normally performed in the national economy.  (A.R. 138.)  Finally, Dr. McClarnon found Plaintiff to be not disabled, and noted that although Plaintiff's conditions resulted in some limitations in her ability to perform work activities, these limitations are not sufficiently severe to prevent her from performing her past work.  (A.R. 139.)

Dr. Betty Vekhnis, a consultative examiner, performed a neurological evaluation of Plaintiff.  (A.R. 540.)  Dr. Vekhnis assessed that Plaintiff had no ataxia or dysmetria, she could walk on her heels and toes, and that her finger to nose was negative.  (A.R. 541.)  Additionally, Plaintiff had normal tone and strength in her upper and lower extremities, as well as no focal

weakness or focal atrophy.  (A.R. 541.)   Examination of Plaintiff's hands showed no intrinsic muscle atrophy and positive Tinel over her right wrist.  (A.R. 541.)   Further, Plaintiff's sensory exam was normal as to primary and cortical modalities, and her deep tendon reflexes were physiological from her upper and lower extremities, and she showed no pathological reflexes. (A.R. 541.)  Dr. Vekhnis opined that Plaintiff demonstrated a non-focal neurological examination, a history of right carpal tunnel syndrome, CTS, and moderate degenerative disc disease in her cervical spine.  (A.R. 541.)  Dr. Vekhnis also opined that Plaintiff can use both hands for fine and gross motor functions.  (A.R. 541.)

## B.  Review of Testimonial Evidence

### i.    Plaintiff's Testimony

At the hearing, Plaintiff testified that she lives with her sister, who helps her financially and does things that are difficult for Plaintiff to do on her own, such as drive longer distances. (A.R. 70-71.)  Plaintiff explained that she does not drive longer distances anymore because her vision is blurry, regardless of whether she wears glasses.  (A.R. 71-72.)  Plaintiff stated she believed the blurry vision stemmed from her headaches, which made it difficult to focus or see anything clearly.  (A.R. 72.)   Plaintiff also noted that her only source of income is food stamps. (A.R. 85.)

As to her recent work history, Plaintiff explained she had previous jobs as a school bus aide until 2012, a home health aide, which she stopped doing seven or eight years prior to the hearing, and she had a home cleaning business until five years prior to the hearing.  (A.R. 75-76.) Plaintiff stated that she could no longer clean houses because she could not do the lifting, scrubbing, or mopping because of her back and other body pains.  (A.R. 101.) Plaintiff also worked at jewelry store between 1998 and 2011.  (A.R. 76-77.)  Plaintiff testified she was an assistant

manager for eight or nine years, and a manager for about two years.  (A.R. 102.)  Plaintiff implied that she was laid off because her company was going out of business.  (A.R. 77.)

Plaintiff further testified as to her physical and mental limitations and medical history. Plaintiff has had issues with gripping and sensation in her hands since at least when she stopped working in 2012.  (A.R. 89-90.)  Plaintiff discussed her right-hand carpal tunnel surgery, and explained that while the surgery eliminated the tingling in her hand, the doctors damaged her hand when taking out stitches from the surgery, and as a result her hand is extremely sensitive where the stitches came out and there is constant, throbbing pain that has affected her hand strength and motion.  (A.R. 74.)   Even with the tingling gone in her right hand, Plaintiff described that she still has strength issues in both hands, and in particular, she has issues dealing with small items, such as picking up coins, buttoning buttons, and zipping her clothing.  (A.R. 89-91.)  Plaintiff testified that she can sometimes pick up a cup of coffee, but cannot pick up a gallon of milk without help from her opposing hand.  (A.R. 90-91.)  She also has difficulty twisting items to open things.  (A.R. 91.)  Prior to surgery, Plaintiff testified that while she sometimes wore wrist splints during the day for pain, she mainly wore them at night due to the pain she felt from tossing and turning while sleeping.  (A.R. 86-87.)  Plaintiff also described her lower back problems, which she explained causes shooting paint from her left lower back down to her hip and thigh.  (A.R. 78.)  Plaintiff reported that she has done physical therapy for her back issues, and has never had surgery or taken medication for the pain, but has taken medication for tingling and numbness in her hands.  (A.R. 78-79.)  Plaintiff also complained of degenerative neck pain and complications from gall bladder surgery that caused her to constantly go to the bathroom.  (A.R. 82-83.)

Plaintiff testified that she has trouble standing for longer than 25 minutes at a time.  (A.R. 87-88.)  Plaintiff stated does not have pain when sitting in the upright position, but she has pain

when she stands up after sitting.  (A.R. 88.)  When she sits in a reclined position, Plaintiff states

that there is less pressure on her neck and back.  (*Id.*)

### ii.    Vocational Expert's Testimony

The Vocational Expert, William T. Slaven III (the "VE"), both responded to interrogatories

from the ALJ and attended a supplemental hearing with the ALJ and Plaintiff. (A.R. 50-63; A.R.

379-382.)  In the interrogatories, the VE classified Plaintiff's past work as manager of a jewelry

store under DOT code 185.167.046, which is skilled work, with a Specific Vocational Preparation

("SVP") of 7, which is light exertion.  (A.R. 40, 379.)  Her past work in jewelry sales was also

classified under DOT code 279.357-058, which is skilled work, with an SVP of 5, and is generally

performed at a light exertional level and was performed by Plaintiff at a medium exertional level.

(A.R. 40, 379.)

In the interrogatories, the VE was asked the following hypothetical question:

Assume [] that this individual has the [RFC] to perform light work as defined by
20 CFR 404.1567(b) and 416.967(b) except [t]he claimant can climb ramps and
stairs occasionally, climb ladders, ropes, or scaffolds occasionally, balance
frequently, stoop frequently, kneel frequently, crouch frequently, crawl
occasionally.  Could the individual described . . . perform any of the [Plaintiff's]
past jobs as actually performed by the claimant or as generally performed in the
national economy?

(A.R. 380.)  The VE responded "yes."  (*Id.*)  The interrogatory then asked the VE to assume the

same individual was also limited to frequent handling, fingering, and feeling bilaterally, and

further asked if the hypothetical individual could perform her past work as actually or generally

performed.  (*Id.*)  The VE also responded "yes."  (A.R. 381.)  The final hypothetical asked if the

hypothetical individual could perform her past work, as generally or actually performed, if it was

limited to occasional handling, fingering, and feeling bilaterally.  (*Id.*)  The VE responded "no,"

because the combined titles in the DOT require frequent handling.  (*Id.*)  The VE also opined that

the Plaintiff acquired transferable skills that would transfer to an occupation that meets the RFC with little vocational adjustment.  (A.R. 382.)  In particular, the vocational expert determined that the skills could transfer to the DOT occupation of telephone solicitor.  (*Id.*)

At the hearing, Plaintiff's attorney asked the VE a number of clarifying questions.  (A.R. 50-63.)  The VE testified that Plaintiff's past relevant work as a manager of retail stores and as a jewelry sales person required frequently handling, fingering, and feeling.  (A.R. 41, 381.)  Further, the VE also opined that a person who needed to use the restroom every 30 minutes would be off-task too often to perform Plaintiff's past work.  (A.R. 55-56.)  Additionally, the VE stated that a person who was off-task 11 percent of the day because she was dropping items and had to pick them up would be unable to perform the past work.  (A.R. 56-57.)

## C.  The ALJ Decision

On July 25, 2019, the ALJ issued a written decision analyzing whether Plaintiff satisfied her burden to demonstrate disability using the standard five-step process.  (A.R. 27-41.) At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since her amended alleged onset date of disability.  (A.R. 30.)  At step two, the ALJ found that Plaintiff's degenerative disc disease and carpal tunnel syndrome were severe impairments.  (*Id.*)  At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the relevant CFR.  (A.R. 32.)  In making this finding, the ALJ specifically considered Listings 1.04, 1.08, 11.02, and 11.14.  (*Id.*)  The ALJ determined that Plaintiff's degenerative disc disease did not meet listing 1.04, because the record did not demonstrate compromise of a nerve root or the necessary spinal cord findings.  (*Id.*)  According to the ALJ, Plaintiff's carpal tunnel did not meet listing 1.08, because her carpal tunnel release improved her symptoms and Plaintiff has not lost

function of her upper extremities.  (A.R. 32-33.)  Further, Plaintiff did not have any neurological deficits as described by listing 11.01, and therefore, her impairments did not meet that listing either.  (A.R. 33.)  There are no specific listings for migraine headaches, but the ALJ considered listing 11.02 criteria, which is for epilepsy.  (*Id*.)  The ALJ determined that although the record showed typical headache event patterns, the record did not show the frequency or severity necessary to meet the 11.02 listing criteria.  (*Id*.)

The ALJ then determined that Plaintiff had the residual functional capacity (RFC) to perform light work, except that Plaintiff can occasionally climb ramps, stairs, ladders, ropes, or scaffolds, she can occasionally crawl, and she can frequently balance, stoop, kneel, and crouch. (A.R. 33.)  At step four, the ALJ determined that Plaintiff was capable of performing "her past relevant work as a jewelry salesperson as generally performed and her past relevant work as a manager, retail store, as generally and as actually performed."  (A.R. 41.)  As such, the ALJ determined that Plaintiff was not disabled.  (A.R. 41.)

## II.  <u>STANDARD OF REVIEW</u>

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001).  The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the

standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (internal quotations and citations omitted). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." *Id*. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id*. § 1382c(a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether

the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id*. § 404.1520(a)(4)(i); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See id*. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. *Id*. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." *Id*. § 404.1522(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id*. § 404.1522(b)(1). A claimant who does not have a severe impairment is not considered disabled. *Id*. at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). *Id*. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id*. § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See id*. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id*. An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186. If the claimant is not conclusively disabled

under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the RFC to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141.

If the claimant can perform past relevant work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her past relevant work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant can perform work and not disabled. *Id*.

## III. <u>PLAINTIFF'S CLAIMS ON APPEAL</u>

First, Plaintiff maintains that her past relevant work was a composite job, *i.e.*, a jewelry manager who also conducts sales, and as such, the ALJ erred by determining whether Plaintiff could perform that work as generally performed in the economy. (Pl. Br. at 3.) Second, Plaintiff argues that the ALJ's RFC determination failed to account for Plaintiff's limitations as to fingering and handling, and therefore, was not based on substantial evidence. (Pl. Br. at 8.)

### A.  Plaintiff's Past Relevant Work is Not a Composite Job

Plaintiff contends that her past relevant work as "jewelry salesperson" and "manager, retail store" was performed "simultaneously" and, as such, her relevant work was a composite job. (Pl. Br. at 3.) In that connection, Plaintiff argues that, because her past work was a composite job, the

ALJ mistakenly considered whether she could perform her past work as generally performed, when relevant Social Security regulations limit the ALJ to determining whether Plaintiff could perform her past composite job as it was actually performed.  (Pl. Br. at 5-7.)  Defendant disagrees, and argues that the ALJ did not find that the two DOT occupations at issue comprised a composite job, but rather, the ALJ determined that Plaintiff had two separate jobs that qualified as past relevant work and that each job had a DOT counterpart.  (Def. Br. at 10.)  In support, Defendant notes, among other things, that Plaintiff's own work history report and testimony indicate that she started as a sales associate, and later, was promoted to a management position.  (Def. Br. at 11; A.R. 92.) I agree with Defendant, and find that Plaintiff's past relevant work was not a composite job.  As such, I need not reach the question of whether the ALJ mistakenly considered her prior work as generally performed.

> In assessing a claimant's past relevant work,
>
> (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Garibay v. Comm'r of Soc. Sec.,* 336 F. App'x 152, 158 (3d Cir. 2009) (quoting *Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 120 (3d Cir. 2000)).  According to the Social Security Administration,

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

14

*Titles II & XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in Gen.,* SSR 82–62 (S.S.A. 1982); *see also Burnett,* 220 F.3d at 120; *Garibay,* 336 F. App'x at 158.  In evaluating this evidence, the ALJ should find whether "the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it," or whether "the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." S.S.R. 82–61.  The ALJ may rely on job descriptions found in the Dictionary of Occupational Titles ("DOT") to assist in determining the ordinary job requirements of the occupations in question. *Id.* "If the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" *Garibay,* 336 F. App'x at 158 (quoting S.S.R. 82–61).

Because certain jobs "defy easy categorization" and do not fit within any job in the DOT, the ALJ may determine that the claimant's past work is a "composite job." *Levyash v. Colvin*, No. 16-2189, 2018 WL 1559769, at *11 (D.N.J. Mar. 30, 2018). "A composite job is one which has significant elements of two or more occupations and no counterpart in the DOT." *Schwartz v. Berryhill*, No. 17-854, 2018 WL 3575046, at *6 (W.D. Pa. July 25, 2018); *see Garcia v. Colvin*, Civ. No. 12-4191, 2013 WL 3321509, at * 11 n.5 (N.D. Ill. June 28, 2013) (observing that, "if the ALJ can accurately describe the main duties of past relevant work only by considering multiple DOT occupations, the claimant may have performed a composite job." (citation omitted)).

Here, Plaintiff's position that her prior work was a composite job is based on an inaccurate reading of the record and a misunderstanding of the ALJ's decision.  First, as required under relevant regulations, the ALJ examined Plaintiff's work history for "substantial gainful activity,

15

performed long enough for the [Plaintiff] to achieve average performance, [and] performed within the relevant period[,]" and determined that Plaintiff had past relevant work in *both* "jewelry sales" and "manager, retail."  (A.R. 40.)   Plaintiff argues that in making this finding, the ALJ was implicitly finding that these two DOT occupations, in combination, comprised her prior work as a jewelry store manager, or a composite job.  (Pl. Br. at 3.)  This is incorrect.  Rather, as Defendant correctly argues, the ALJ was describing two *separate* jobs from Plaintiff's work history that each had their own DOT counterpart: one in "jewelry sales" and a second as "manager, retail."  (A.R. 40; A.R. 279-282.)[2]  This is confirmed by the record, which shows that Plaintiff was a jewelry salesperson, and then was promoted into a new management position.  (A.R. 54 ("Q. [Plaintiff] had two [jobs], one as a manager in a jewelry store and one as a sales associate at a jewelry store. A. Right[.]"); A.R. 92 ("Q: Now, I understand from reading your functional report that you started as a . . . salesperson [and] worked your way up to management[?] A. Yes."); A.R. 279-282)

---

[2] Countering Defendant's argument, Plaintiff notes that the VE's answers to hypotheticals regarding whether a hypothetical person could perform Plaintiff's past work were based on the "combined titles," that is, a combination of the "jewelry sales" and "management, retail" DOT occupations. (Pl. Reply Br. at 1; A.R. 380-381.) In Plaintiff's view, this supports her position that the ALJ analyzed that her past work as a composite job. (Pl. Br. at 5.) While the VE's use of the word "combined" is, admittedly, confusing, based on the record, I disagree that the word "combined" meant Plaintiff worked a composite job. First, Plaintiff's work history report and testimony are definitive that she held a job in jewelry sales, and then was promoted to jewelry store manager. (A.R. 92; 279-282) Second, the VE stated at the supplemental hearing that Plaintiff worked two separate prior jobs. (A.R. 54.) Third, the ALJ, citing to the VE's interrogatories and testimony, clearly read the VE's statements to mean that Plaintiff held two separate positions that each had DOT counterparts. (A.R. 41 ("[T]he [VE] testified that the [Plaintiff's] past relevant work as a manager of retail stores and as a jewelry sales person require frequently handling, fingering and feeling. Additionally, [VE] Slaven opined that a[] hypothetical individual . . . could perform the [Plaintiff's] past relevant work as jewelry sales and manager, retail store.") Finally, there is no reading of the DOT occupations at issue that results in Plaintiff's prior work being a composite job. As I will explain *infra*, even if her job as "manager, retail" required her, as actually performed, to conduct work required by "jewelry sales," the duties of both occupations are encompassed in the "manager, retail" DOT description, and therefore, her prior manager work is not a composite job.

Moreover, after concluding that these two separate jobs qualified as Plaintiff's past relevant work, the ALJ went on to separately compare the physical and mental demands of each job to Plaintiff's RFC, as is required at step four.  (A.R. 40; *see Garibay,* 336 F. App'x at 158 ("the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work."))  The ALJ ended the analysis by finding that Plaintiff "can perform her past relevant work as a jewelry salesperson as generally performed and her past relevant work as a manager, retail store, as generally and as actually performed."  (A.R. 41.)  In sum, because each of these two jobs had their own DOT counterpart, the ALJ did not, and had no basis to, find that Plaintiff's past relevant work was a composite job. *See Schwartz*, 2018 WL 3575046, at *6 ("A composite job is one which has significant elements of two or more occupations and no counterpart in the DOT.").

Second, Plaintiff also assumes that because her job as a jewelry store manager required elements of both a manager and salesperson, her prior relevant work should have been found to be a composite job.  (*See* Pl. Br. at 3-5.)  But, as explained *supra*, a finding of a composite job is only permitted when the prior work in question does not have a DOT counterpart.  Here, the "manager, retail sales" DOT description covers Plaintiff's prior work as a jewelry store manager that also had sales duties:

> Manages retail store engaged in selling specific line of merchandise . . . jewelry[.] [P]erforming following duties personally or supervising employees performing duties: Plans and prepares work schedules and assigns employees to specific duties. Formulates pricing policies on merchandise according to requirements for profitability of store operations. Coordinates sales promotion activities and prepares, or directs workers preparing, merchandise displays and advertising copy. Supervises employees engaged in sales work, taking of inventories, reconciling cash with sales receipts, keeping operating records, or preparing daily record of transactions for ACCOUNTANT (profess & kin.) 160.162-018, *or performs work of subordinates, as needed.* Orders merchandise or prepares requisitions to replenish merchandise on hand. Ensures compliance of employees with established security, sales, and record keeping procedures and practices. May answer

customer's complaints or inquiries. May lock and secure store. May interview, hire, and train employees. May be designated according to specific line of merchandise sold, such as women's apparel or furniture; related lines of merchandise, such as camera and photographic supplies, or gifts, novelties, and souvenirs; type of business, such as mail order establishment or auto supply house; or general line of merchandise, such as sporting goods, drugs and sundries, or variety store.

Manager, retail store, DOT 185.167-046, 1991 WL 671299 (emphasis added).  Plaintiff testified that as a manager, she was required to make schedules, load inventory, receive merchandise, inspect merchandise, ensure the store was clean, change lightbulbs, and change displays, among other tasks.  (A.R. 95-97.)  Further, Plaintiff testified that after being promoted to manager, she was still required to do all of her salesperson duties.  (A.R. 95-96.)  These duties match the above job description, which importantly, includes that a person doing this job "performs work of subordinates, as needed."  As such, Plaintiff's work as a retail sales manager fits within the description of a DOT counterpart, and therefore, the ALJ was not required to determine whether Plaintiff's prior relevant work as a manager was a composite job.  Accordingly, I need not determine whether the ALJ conducted a proper past relevant work analysis for composite jobs.

### B.  Substantial Evidence Supports the ALJ's RFC Determination

Next, Plaintiff argues that the ALJ's RFC finding is not based on substantial evidence.  (Pl. Br. at 8.)  Specifically, Plaintiff maintains that her functional limitations prohibit her from performing light work, including performing frequent fingering and handling.  (Pl. Br. at 11.) Plaintiff asserts that there is undisputed evidence in the record that both her treating doctors and the consultative examiner found that Plaintiff's medical limitations only allow her to complete occasional, rather than frequent, fingering and handling.  (*Id*.)  As such, Plaintiff maintains that she cannot perform the work required by her RFC.  (Pl. Br. at 15.)  I disagree, and find that the ALJ's RFC determination is based on substantial evidence.

18

"[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see* 20 C.F.R. § 404.1545(a).  When a case is brought to an administrative hearing, the ALJ is charged with ultimately determining the claimant's RFC.  20 C.F.R. §§ 404.1527(e), 404.1546(c), 416.927(e), 416.946(c).  "[I]n making a residual functional capacity determination, the ALJ must consider all evidence before him," and, although the ALJ may weigh the credibility of the evidence, he must "give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121; *see Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  When assessing a claimant's RFC, an ALJ must consider all of the claimant's medically determinable impairments which are supported by the record, including those considered non-severe.  20 C.F.R. §§ 404.1545 (a)(2), 416.945 (a)(2); *see also Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d. Cir 2005).  "Where the ALJ's findings of fact are supported by substantial evidence, [district courts] are bound by those findings, even if [the courts] would have decided the factual inquiry differently." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3rd Cir. 2012) (internal quotation marks and citation omitted); *see McCrea*, 370 F.3d at 360 ("Substantial evidence has been defined as 'more than a mere scintilla'; it means 'such relevant evidence as a reasonable mind might accept as adequate.'" (citation omitted)).

In his Opinion, the ALJ thoroughly "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence . . . based on the requirements of 20 CFR 404.1529 and 416.1529 and SSR 16-3p."  (A.R. 33.)  After considering this evidence, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements

concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with medical evidence and other evidence in the record[.]"  (A.R. 35.)

The ALJ gave particular care to analyze the medical evidence related to her carpal tunnel, and found that "the record reveals that [Plaintiff] can frequently handle, feel, and finger."  (A.R. 36.)  Specifically, the ALJ noted that on August 5, 2014, Dr. Eng found Plaintiff's wrist x-rays to be unremarkable, but that they showed carpal tunnel syndrome.  (A.R. 35-36.)  Thereafter, Dr. Eng recommended that Plaintiff wear splints and continue physical therapy.  (A.R. 36.)  The ALJ also noted that in September 2014, Dr. Rao found ganglion cysts on her wrists, but noted she was asymptomatic.  (*Id*.)  Further, the ALJ discussed that in May 2015, Plaintiff reported to Dr. Tan that she had bilateral upper extremities weakness in both wrists, and that she could comb her hair, but not for long.  (*Id*.)  Dr. Tan diagnosed Plaintiff with a history of polymyositis carpal tunnel syndrome, and referred Plaintiff for a neurological evaluation.  (*Id*.)  The ALJ explained that, a few days later, Plaintiff visited neurologist, Dr. Khakoo, who diagnosed Plaintiff with bilateral carpal tunnel syndrome and referred her for an EMG and nerve conduction studies.  (*Id*.)

After the June 2015 EMG and nerve conduction studies revealed right carpal tunnel syndrome, Plaintiff's carpal tunnel was initially managed conservatively with physical therapy.  (*Id*.)  The ALJ discussed Plaintiff's physical therapy records, where Plaintiff reported constant tingling in her fingertips and dropping things, but her physical therapist noted that Plaintiff's wrist showed normal range of motion.  (A.R. 37.)  Later, in October 2015, another physical therapist assessed that Plaintiff was making slow progress.  (*Id*.)  In November 2015, Dr. Jacob, Plaintiff's treating doctor, diagnosed Plaintiff with bilateral numbness and tingling of her hands, but more in her right hand.  (*Id*.)  In December 2015, Plaintiff reported that while she still had numbness in her right hand, she further indicated that it was 50% better.  (*Id*.)  The ALJ also considered Plaintiff's

20

function report from May 19, 2015, where Plaintiff noted her difficulties lifting more than two to five pounds and using her hands for prolonged periods due to numbness.  (A.R. 34.)  The ALJ stated that on a November 2, 2015 function report, Plaintiff maintained that she wears splints on her hands, she was losing all feeling in her hands and arms, and she had difficulty opening and lifting things.  (*Id*.)  The ALJ further explained that at her hearing, Plaintiff testified that she underwent right hand carpal tunnel surgery, and although she continues to experience swelling and weakness, the tingling is gone.  (A.R. 34.)  Plaintiff also testified that her doctors sought to have her carpal tunnel release surgery on her left hand, but Plaintiff stated that she does not want to undergo that surgery after her experience with side effects in her right hand.  (A.R. 34.)

Based on the various considerations, the ALJ found that Plaintiff's right-hand had symptoms improved after carpal tunnel release surgery, and that she can now frequently finger, feel and handle bilaterally.  (A.R. 35, 37.)  In so concluding, ALJ explained that in the year prior to carpal tunnel release surgery, Plaintiff was treated with numerous injections for her carpal tunnel symptoms.  (A.R. 37.)  After these injections, the ALJ noted that Plaintiff generally denied numbness and weakness, and was no longer dropping things, although she did have trouble with residual tingling during nighttime.  (*Id*.)  But after the carpal tunnel release surgery in February 2018, the ALJ noted that Plaintiff's numbness and tingling were "completely gone" except for one episode overnight.  (A.R. 38.)  The ALJ also relied on Plaintiff's statements made in May 2018, that her right hand was still weak compared to her left, but that her right hand was improving and that she had decreased right wrist pain and was able to use the hand more with functional tasks. (*Id*.)

The ALJ also considered the consultative medical opinions.  The ALJ, first, pointed to the opinion of Dr. Jose Rabelo, a state agency medical consultant, who opined in July 2015 that

Plaintiff's impairments were non-severe, and that from an internal medicine perspective, she had no physical restrictions.  (A.R. 38.)  This opinion was accorded partial weight to the degree it was consistent with the present RFC assessment.  (*Id*.)   The ALJ further noted that Dr. Betty Vekhnis, a consultative examiner, assessed in March 2016 that Plaintiff's hands showed no intrinsic muscle atrophy, positive Tinel's test over right wrist, her sensory examination was normal to primary, and her cortical modalities and her Phalen's sign was positive on the right.  (A.R. 39.)  Dr. Vekhni noted that despite a history of right carpal tunnel syndrome, Plaintiff did not use an assistive device for ambulation and can use both hands for fine and gross motor functions.  (*Id*.)  Dr. Vekhni's opinion was accorded significant weight to the degree it was consistent with the Plaintiff's present RFC, and because it was generally consistent with the substantial evidence on the record, including Plaintiff's course of treatment, diagnostic tests, and Dr. McLarnon's opinion.  (*Id*.)  The ALJ also determined that Dr. Vekhni's opinion was generally consistent with Plaintiff's own statements that, at least during the relevant period, Plaintiff worked as a home health aide and ran a cleaning service.  (*Id*.)  Finally, the ALJ considered the opinion of Dr. Mary McLarnon, a state agency medical consultant, from June 15, 2016, which opined that Plaintiff could perform a light range of work.  (*Id*.)  Dr. McLarnon determined that Plaintiff had no limitations for feeling and can frequently handle and finger with her right upper extremity.  (*Id*.)  This opinion was also accorded significant weight as consistent with substantial evidence in the record.  (*Id*.)

Furthermore, the ALJ determined that Plaintiff's allegations were only partially consistent with the record.  (*Id*.)  As an example, the ALJ noted that Plaintiff claimed significant limitations with her hands, but she is independent in her daily living activities and her carpal tunnel syndrome improved after right carpal tunnel release.  (*Id*.)  Additionally, Plaintiff's claimed limitations were not consistent with her reports that, during at least part of the relevant period, she worked as a

home health aide and ran a cleaning service.  (A.R. 39-40.)  The ALJ pointed out that that while Plaintiff stated that doctors have recommended left hand surgery, the record did not reveal that surgery was ever recommended.  (A.R. 40.)

Nevertheless, Plaintiff argues that because her treating physicians' diagnosis regarding her ability to finger and handle is undisputed, the ALJ's RFC is not based on substantial evidence.  In support, Plaintiff cites only to medical evidence that implies she cannot finger or handle, much of which is, in fact, explicitly considered in the ALJ's Opinion, and makes no mention of contrary or inconsistent evidence in the record.  (Pl. Br. at 12-15.)  Specifically, Plaintiff points to various physician reports from 2014-2016, as well as one report post-carpal tunnel surgery in March 2018, where physicians noted that Plaintiff presented with hand numbness, tingling, decreased sensation, carpal tunnel syndrome, degenerative joint disease, grip weakness, and pain from lifting, among other symptoms.  (Pl. Br. at 12-15.)  But, as demonstrated *supra*, the ALJ clearly considered both Plaintiff's treating physicians' diagnoses, and evidence that differed from these diagnoses, particularly in the period following her January 2018 right carpal tunnel surgery.  For example, the ALJ noted Plaintiff's treating physicians found that injections and surgery helped alleviate Plaintiff's symptoms.  (A.R. 38.)  This includes two post-operative statements made in February and April 2018 when Plaintiff reported that her numbness and tingling had either improved or were completely gone. (A.R. 37-38, 759-760.)   The ALJ's Opinion further indicates that on May 1, 2018, Plaintiff's pain was a one at rest and three with activity.  (A.R. 37, 674.)  The ALJ also observed that on May 31, 2018, Plaintiff reported that her right hand was still weak compared to her left, but that it was improving and "she had decreased right wrist pain and was able to use [the] hand more with functional tasks."  (A.R. 38.)  Additionally, Plaintiff is incorrect in claiming that the consultative examiners' reports support the findings of her treating physicians.  (Pl. Br. at 11.)

23

The ALJ explained that Dr. Rabelo's consultative exam, which found her to be not disabled, stated that Plaintiff had full range of motion in her extremities and that she had no physical restrictions. (A.R. 38, 116-121.)  In addition, Dr. McLarnon's consultative exam found that she was capable of light work and can frequently handle and finger with her right upper extremity.  (A.R. 39, 136-137.)  In light of this, and other evidence, the ALJ determined that Plaintiff's statements regarding the effects of her impairments were "not entirely consistent" with the medical and consultative evidence, and determined that Plaintiff had the RFC to perform light work with frequent fingering and handling, among other limitations.  (A.R. 35.)  As such, it is clear that the ALJ's RFC determination was based on evidence well above the "mere scintilla" needed to meet the substantial evidence standard.  *McCrea*, 370 F.3d at 360.

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, the ALJ's decision is **AFFIRMED**. An appropriate order shall follow.


Date:   January 19, 2022                                    <u>/s/ Freda L. Wolfson</u>
                                                                        Freda L. Wolfson
                                                                        U.S. Chief District Judge